No. 27,438.

The State of Kansas, *Appellee,* v. Orville Owen, *Appellant.*

(261 Pac. 600.)

SYLLABUS BY THE COURT.

1. Prostitution—*Procuring to Go from Place to Place—Consent of Female No Defense.* In a prosecution under what is designated as the white-slave act a question whether sexual intercourse was obtained with the consent of the female is not a defense or material to the prosecution.

2. Witnesses — *Cross-examination — Discretion of Court.* The limitations on the extent of the cross-examination of witnesses examined and held to be without material error.

3. Prostitution—*Former Illicit Relation No Defense.* Statement made before the trial by persons afterwards called as witnesses for the prosecution as to former illicit relations with the female, and which statements were inconsistent with their testimony given at the trial, were properly limited to the matter of the credibility of the witnesses.

4. Same—*Procuring to Go from Place to Place—Accomplices.* No error was committed in refusing to charge the jury that certain of the witnesses were accomplices, and that the rule applicable to weighing the evidence of accomplices should be applied to their testimony.

5. Criminal Law—*Argument of Counsel—Inference as to Failure of Defendant to Testify.* A statement by counsel for the prosecution in his argument to the jury which indirectly carried the inference that the defendant had not taken the stand to testify in his own behalf was erroneous, but before a verdict can be set aside for that reason it must appear that it resulted in

Criminal Law, 16 C. J. p. 901 n. 36; 17 C. J. pp. 272 n. 2, 302 n. 55. Prostitution, 32 Cyc. pp. 732 n. 10, 735 n. 29. Witnesses, 40 Cyc. pp. 2506 n. 10, 2626 n. 75.

substantial prejudice to the defendant—following *State v. Peterson,* 102 Kan. 900, 171 Pac. 1153.

6. SAME—*Generally.* Other errors assigned are held to be without material error.

Appeal from Lyon district court; ISAAC T. RICHARDSON, judge. Opinion filed December 10, 1927. Affirmed.

*W. C. Roberts, W. L. Huggins* and *O. T. Atherton,* all of Emporia, for the appellant.

*William A. Smith,* attorney-general, *Roland Boynton,* assistant attorney-general, and *O. R. Stites,* county attorney, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.:   Orville Owens was prosecuted under what is called the white-slave act.   In the information he was charged in three counts with procuring Diana Hughes to go from one place to another within the state for the purpose of prostitution, fornication or concubinage.   The trial resulted in the verdict of guilty on each of the counts, and he was sentenced to the state reformatory.

It is contended that the prosecution was a frame-up to charge the defendant, who had left the state, with an extradictable offense so as to secure his return where he might be compelled to marry Diana Hughes or to furnish money to support her and her child, born to her as the result of intercourse with defendant months before the transactions involved in this prosecution.   In this case Diana testified that when she was about eighteen years of age she began keeping company with defendant; that he induced her to have sexual relations with him, with the result that she became pregnant.   About three months before the birth of her child she said that the defendant took her out in his automobile and invited several boys to go along with them, and when a secluded place was reached he not only required her to submit to intercourse with himself, but also with the boys he had brought along.   On three separate trips the defendant took her into the country and each time procured boys to go along with them, and there was no concealment that the purpose of the trips was indulgence in sexual intercourse.   The boys who accompanied them finally testified that they were invited by the defendant, and they verified the testimony of Diana that the trips were made and the acts committed that were charged in the information.   She also testified that after the transactions in question the defendant said he had her where he wanted her and

that he would do nothing to help her. In answer to a question, she testified that "he said that he couldn't do anything for me because he had these other boys do it, and he thought he would get out of it." Whether or not the prosecution was instituted for purposes other than to vindicate the law, it must be said that the information contained a specific charge of violations of the white-slave act, and was supported by abundant and practically uncontradicted evidence. The facts brought out in the evidence showed such grossness and depravity that we do not feel warranted in reciting them here. It is enough to say that the verdict and judgment are well sustained by the proof.

Some procedural objections are raised by the defendant. There is complaint that the court did not permit full cross-examination of some of the witnesses as to whether they had previous acquaintance with Diana before the acts in question or had sexual relations with her prior to the acts charged. The ruling was based on the theory that they did not relate to the offense for which the defendant was prosecuted. For instance, Diana was asked if she did anything to fight off the defendant and the boys when the transactions in question occurred. This was properly excluded. It was not a case of rape or bastardy, and whether or not the acts were committed with or without consent were not material to a white-slave charge. An objection was sustained to a question asked Diana, if she did not anticipate that she would obtain money for the support of her child as a result of the prosecution. She answered "no" before the ruling was made holding it to be incompetent. There was no error in the ruling. It did not relate to the charge that defendant had procured her to go from one place to another for the purpose of prostitution, fornication or concubinage, and even if it had been a bastardy case, the fact that the female seeks to make the father of the child pay money towards its support would not be discreditable. When one of the boys was a witness and giving testimony as to what occurred on one of the three mentioned trips into the country, he was asked on cross-examination if he had ever had intercourse with any other than Diana. He said he did not remember. He was then asked if he had not signed a statement procured by Howard Owens, a brother of the defendant, to the effect that he had intercourse with Diana in August and September, 1924, and that it had been procured with the consent of Diana. The witness admitted that he had signed the statement, which was in the form of an affidavit, but was not sworn to, and this

was offered in evidence by the defendant. The court hesitated about receiving it, but finally admitted the statement, telling the jury that it was admitted and could only be considered as affecting the credibility of the witness. A like statement had been obtained from another of the boys who testified in behalf of the state, and it was admitted in evidence with the same limitation. Both said that they had made the statement to help the defendant, but that they were untrue. There was no error in limiting the scope and application of this testimony.

Another instance was the offer by the defendant to prove that Diana had said she hoped to get some money to help raise the baby. Diana stated that she did not remember any such conversation with the proposed witness, and the evidence was rejected. Defendant offered to prove that Diana had told the witness that she hoped to get some money out of the litigation, and added that already defendant had offered $2,000 to drop the suit. There was no error in excluding the testimony.

Some other rulings of the same character were made as to questions asked on cross-examination, and also upon offers of testimony in contradiction of statements of witnesses for the state. Matters that were deemed to be material as affecting credibility were admitted by the court, and while some others, not all of which have been mentioned, might have been received, the exclusion of them cannot be regarded as material error, as the code provides that only errors which affect substantial rights of defendant furnish grounds for reversal. (R. S. 62-1718.) The extent to which a cross-examination may go is largely within the discretion of the court and depends always on the circumstances of the case (*State v. Allen,* 98 Kan. 778, 160 Pac. 795), and after a reading of the record we find nothing in the limitations imposed or in the exclusion of evidence which approaches material error.

Complaint is made of the refusal of an instruction in respect to the weight to be given to the testimony of accomplices in the commission of a crime. It is assumed and argued by defendant that the boys taken out by defendant on the trips mentioned were accomplices in the white-slave act, and that the rule applicable to accomplices should have been applied to the consideration of their testimony. We think they cannot be regarded as accomplices in the offense charged. It was the defendant who took the girl in his

State v. Owen.

automobile from one place to another for criminal purposes, and not the boys. He also took the boys with him. They did not participate in the taking, and although they were guilty of criminal conduct during the trip and subject to prosecution for another offense, it was not the offense with which the defendant is charged, and they were not accomplices of defendant in that offense. There is no error in the refusal of the requested instruction.

Complaint is made of an instruction to the effect that some evidence had been received tending to show illicit relations between defendant and Diana prior to the criminal acts in question, and that this evidence might be considered in determining the motive, if any, the defendant had for doing the acts charged in the information. It is not open to question that such testimony is admissible for the purpose named, and it may be stated that the court took care to admonish the jury as follows:

"However, and in this connection, you are cautioned that such acts of illicit commerce, if any, between the defendant and Diana Hughes, prior to the acts complained of in the information as hereinbefore explained to you, constitute no part of the crime charged against the defendant, but you may consider the same in showing the relations of the parties."

Another ground of error assigned is misconduct of counsel for the state in the argument of the case to the jury. It is claimed that he violated the provision which forbids an attorney prosecuting the case to refer to the fact that the defendant had failed to testify. (R. S. 62-1420.) There was no direct reference by the attorney to the neglect of the defendant to testify, but it is argued that the language used by him pointed clearly to that neglect. This is the language used:

"For the sake of this argument let us say they were equally guilty; but because they are equally guilty of being out there with that girl does not excuse the defendant, who hauled them out there. Who is it that says that didn't take place? Who is it that contradicts the evidence of Diana Hughes and Tom Sawyer and Earl Watkins and Chester Drennon? Who is it that says that isn't so? We find Diana Hughes saying that on the way out there her sweetheart told her she would have to submit to the attentions of these men. Where is the evidence which contradicts that? Where is the evidence from that chair which says that isn't so? If you were the defendant, Mr. Rumford; if you were the defendant, Mr. Fleming; if you were the defendant, Mr. Matile; if you, Mr. Newman, were the defendant; or you, Mr. Lawrence; or you, Mrs. Currier; or you, Mrs. Barker; if you were the defendant, Mr. Mohr; or you, Mr. Bonnett; or you, Mr. Davis; or you, Mr. Cannon; or

if you were defendant, Mr. Erpelding; and the evidence given by these boys and this girl was not true, what would you do about it? If you were on trial, what would you do about it? Would you go down to John Calvin Jones, and Mr. Hugh Jones, and Mr. Pitts, and Miss Henderson, and bring them on the witness stand and say, 'What was my general reputation for being a peaceable, industrious and law-abiding citizen?' Is that all you would do on a felony charge that would take away your liberty? What right would you have to say, if you were the defendant in this case, that Diana Hughes and these three boys were guilty of perjury and conspiracy, and then ask a jury of twelve men and women to clear you?"

The inquiry made of jurors as to what they would do about it if they were on trial for the offense, and the evidence of witnesses was not true, would they do no more than to offer evidence of their general reputation for being peaceable and law-abiding citizens, was open to the inference that evidence of good reputation was the extent of that offered for the defense. By a process of reasoning the minds of the jurors might be led to the fact that defendant had not chosen to take the witness stand in his own behalf. The argument was a close approach to a statement that the defendant had not testified in the case, and cannot be approved. Of course, if the jurors were awake, they knew as well as counsel did that defendant had not testified, and even a direct reference to it would not have been any information to them; but so long as the law exists it should be faithfully observed, and no reference to the neglect or refusal to testify should be made directly or indirectly by counsel for the prosecution. However, every departure from the rule does not require or justify a reversal of a judgment of conviction. In the recent case of *The State v. Peterson,* 102 Kan. 900, 171 Pac. 1153, it was held that:

"In an argument to the jury in a criminal action it is error for the county attorney to refer to the fact that the defendant's wife did not testify, but before a judgment of conviction will be reversed it must appear that some substantial right of the defendant was affected by the error."

In that case rulings in earlier cases holding that such references were reversible error were disapproved and overruled. In view of the evidence in the present case we are unable to say that the questioned statement of counsel influenced the jury or any of them in the verdict returned or prejudicially affected any substantial right of the defendant. It may be said that no objection was made by defendant when counsel made the statement, but at the conclusion of

Riemann v. Riemann.

the argument counsel for defendant called attention to it. The court thereupon instructed the jury as follows:

"Counsel for defendant seem to think that something may have been said in the closing argument of Mr. Samuel that in some way challenged your attention to the fact that the defendant did not take the witness stand. In your instructions you will find an instruction that directs your attention to the fact that it is the legal right of the defendant to take the witness stand or not to take it, as he sees fit, and should you have drawn any inference from the closing argument of counsel upon that subject you will dismiss that inference from your consideration in this case."

Other parts of the argument were challenged, but in those we find no error nor occasion for discussion.

The judgment is affirmed.